UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10164-RGS

ROBERT J. BOURQUE

v.

ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

December 9, 2011

STEARNS, D.J.

Robert Bourque, a former nurse at the Department of Veterans Affairs (VA) in Bedford, Massachusetts, brought this pro se action appealing an adverse decision of the Equal Employment Opportunity Commission (EEOC). Bourque alleges that his VA employer discriminated against him, in violation of Title VII of the Civil Rights Act of 1964 and sections 501-504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791-794(a). On September 22, 2011, the court converted a motion to dismiss brought by defendant Eric Shinseki, the Secretary of the VA (Secretary), to one for summary judgment pursuant to Fed. R. Civ. P. 56(c).

**BACKGROUND**

The facts, in the light most favorable to Bourque as the nonmoving party, are as

follows.[1] As a licensed practical nurse (LPN), Bourque was required to engage in "extensive periods of standing and walking," as well as "regular and recurring bending, lifting, stooping, stretching and similar activities on a regular basis." LPN Functional Statement, Ex A.[2] Bourque was often required to lift patients in order to bathe and dress them, and to help them with other hygienic tasks.

In 1998, Bourque suffered a work-related shoulder and neck injury. Compl. ¶ 9. In 2002, he was reinjured. Although Bourque apparently recovered to some extent, the injury remanifested in 2005. *Id.* ¶ 10. The recurring injury made it impossible for Bourque to lift more than 20 pounds on a regular basis, thus significantly restricting his ability to perform patient care duties. *See Id.* ¶ 12. As a result, Bourque was placed on light duty status in 1998, and remained on one version or another of light duty status until 2006. *Id.* ¶¶ 9-11; Bourque Dep. Ex. D; *Bourque v. Shinseki*, 2010 WL 4388607, at *2 (EEOC Office of Fed. Operations Oct. 29, 2010), Ex. F.

In December of 2005, Bourque filed an administrative charge of discrimination with the EEOC. The charge was settled in March of 2006.[3] Compl. ¶¶ 14-15. From

---

[1] *See LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir. 1993).

[2] Most exhibits cited can be found attached to the Jindra Affidavit in Docket # 12.

[3] The details of the charge are not a part of the record. In an EEOC letter appended to Bourque's opposition, a summary of the settlement noted that "[t]he

2

sometime in 2005 to November of 2006, Bourque worked a day shift Monday through Friday, and was not required to work weekends or on holidays. *Id.* ¶ 13. Because the day shift was heavily staffed, Bourque was able to depend on the assistance of co-workers for the LPN tasks that he was unable to perform by himself. *Id.*

On November 6, 2006, hospital management reassigned Bourque to a rotating day tour that required him to work on weekends and on holidays. At the meeting at which he was reassigned, Bourque provided the Assistant Chief of Nursing with doctors' notes verifying his shoulder strain, neck sprain, bulging discs, carpel tunnel syndrome, and degenerate disk disease. Bourque Dep. Ex. D. In response, the Assistant Chief of Nursing gave Bourque an official request for accommodation form. Compl. ¶ 18. Bourque gave the form to his treating physician, Dr. Eric Holstein. For whatever reason, Dr. Holstein never completed the form. *Id.* ¶ 19. Despite his protests, Bourque was reassigned.

On December 14, 2006, Bourque filed a charge with the EEOC, alleging that the VA's failure to offer a reasonable accommodation constituted discrimination on the

---

aggrieved party requested that his light duty assignment be honored as his reasonable accommodation and he be placed on the late tour of 12 midnight-8:00 a.m." It further noted that "Mr. Bourque was advised by management and HR that he may not remain on light duty indefinitely. He agreed with this statement." *Id.* Bourque signed the agreement.

basis of sex (male), disability, and age (Bourque was born in November of 1950), as well as retaliation for engaging in protected EEOC activity (in March of 2006). *Bourque*, 2010 WL 4388607, at *1-2.[4]

The VA's Office of Employment Discrimination Complaint Adjudication completed its investigation on October 18, 2007, concluding that Bourque had failed to make out a viable claim of discrimination. *See* Ex. I. The EEOC informed Bourque of his right to a hearing before an administrative law judge. When Bourque failed to respond within the time period allotted by 29 C.F.R. § 1614.108(f), the VA's decision became final. *Bourque*, 2010 WL 4388607, at *3. Bourque appealed the decision to the EEOC's Office of Federal Operations, which affirmed the final decision in October of 2010. *Id.*

On appeal to this court, Bourque argues broadly that the EEOC erred. He reasserts all of his claims of discrimination, including the claim of retaliation.[5] In an Order issued on September 22, 2011, the court defined the relevant issues for the parties to address on summary judgment. Bourque submitted his response to the Order

---

[4] In late 2007, finding himself unable to cope with the new shift assignment and frustrated with his unsuccessful attempts to find a less physically taxing position within the VA, Bourque elected to retire. Bourque Dep. Ex. D.

[5] "This court has de novo review of the EEOC's decision." *Taylor v. Dole*, 1988 WL 96591, at *2 (D. Mass. Aug. 30, 1988), citing *Chandler v. Roudebush*, 425 U.S. 840, 844 (1976).

on November 3, 2011, and the Secretary replied on November 23, 2011.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). If this is accomplished, the burden then "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmoving party]." *Id*. The nonmoving party "must adduce specific, provable facts demonstrating that there is a triable issue." *Id*. (internal quotation marks omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphases in original).

## TITLE VII: DISCRIMINATION

To make out a claim of age and sex discrimination Bourque must show that: (1) he is a member of a protected class; (2) he was qualified for the light-duty status position he sought; (3) he was subjected to an adverse employment action; and (4) he

5

was treated differently than similarly situated employees outside his protected class. *See Prescott v. Higgins*, 538 F.3d 32, 40 (1st Cir. 2008). "In a disparate treatment case, the plaintiff has the burden of showing that [he] was treated differently from 'persons similarly situated' '*in all relevant aspects*.'" *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994), quoting *The Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989). The proponent must show that the individuals with whom he seeks to be compared have "engaged in the same conduct without such differentiating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Bourque contends that he was "singl[ed] out of the hospital nursing staff because [he] did not fit into the elderly female dominate class."[6] In his opposition, Bourque lists former co-workers who were granted accommodations, but admits ignorance as to

---

[6] As an initial matter, Bourque's age discrimination claim can be disposed of summarily. Although Bourque is a member of the relevant protected class – he is over forty years of age – so too are the "comparable" individuals whom he claims received more favorable treatment. In his charge filed with the EEOC, he pointed to a female nurse a year younger than he, who was not removed from light duty status. *Bourque*, 2010 WL 4388607, at *5. The EEOC concluded, however, that Bourque was not similarly situated to this individual because "the record revealed that [the female nurse] provided the requisite detailed medical documentation to management regarding her medical condition, whereas [Bourque] did not." *Id.*

6

whether they had submitted formal requests for such accommodations, which he admittedly did not do. Instead, Bourque suggests that the court initiate further discovery by ordering the VA to produce information about each of the suggested comparables. *See* Pl.'s Opp'n to Mot. for Summ. J. The court sees no reason for additional discovery on the issue of possible gender discrimination as Bourque's list of persons whom he alleges received preferable treatment is divided nearly equally between men and women.[7]

## REHABILITATION ACT

The Rehabilitation Act prohibits the federal government, acting as an employer, from discriminating against an employee based on a real or perceived disability and from retaliating against an employee who complains to the EEOC about a violation of the Act. *See Calero-Cerezo v. United States*, 355 F.3d 6, 20 (1st Cir. 2004); *Quiles-Quiles v. Henderson*, 439 F.3d 1, 8 (1st Cir. 2006); 29 U.S.C. §§ 791 & 794. The standards used to determine whether the Rehabilitation Act has been violated are the same as those applied under the Americans with Disabilities Act (ADA). *See Calero-Cerezo*, 355 F.3d at 11 n.1, 20; *see also Duncan v. Washington Metro. Area Transit*

---

[7] Of the eleven individuals Bourque lists, six are females (four of whom are over 50 years of ago, one over 40 years of age), and five are male (two of whom are over 60, two over 40, and one over 20).

7

*Auth.*, 214 F.R.D. 43, 49 (D. D.C. 2003) ("Section 504 further clarifies that '[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under [T]itle I of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12201-12204 and § 12210), as such sections relate to employment.' *Id.* 794(d).").

### *Reasonable Accommodation*

To establish a prima facie case of disability discrimination based on a failure of his employer to allow him a reasonable accommodation, Bourque must prove, by a preponderance of the evidence, that: (1) he is disabled within the meaning of the Rehabilitation Act; (2) he is a "qualified individual," in other words, he is able to perform the essential functions of his job if given a reasonable accommodation; and (3) despite its knowledge of the disability, the VA did not afford him an accommodation. *See Calero-Cerezo*, 355 F.3d at 20; *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 259 (2001). If a claimant meets this prima facie burden, it falls to the federal employer to show that the accommodation requested "would impose an undue hardship on the operation of its business." 29 C.F.R. § 1630.9(a). *See also Reed*, 244 F.3d at 259.

The Secretary devotes most of his brief to Bourque's alleged failure to perfect

8

his request for an accommodation. According to EEOC guidelines, the VA "is entitled to request updated medical documentation to verify a complainant's continuing need for accommodation after a period of time." *Bourque*, 2010 WL 4388607, at *6. The Secretary urges the court to adopt the EEOC's conclusion that Bourque had provided only "scant" medical documentation from 2005 and 2006 that failed to establish the extent of Bourque's condition or its expected duration.

Bourque, for his part, admits that he never submitted a formal request for an accommodation, but states that he did not do so because (a) it was "not part of or required as part of my signed settlement agreement;" (b) "I was already on a light duty status assignment as the result of a filed and accepted OWCP [Office of Worker's Compensation Program] claim and a signed settlement for light duty;" and (c) "I did provide medical documentation, on or about May 31, 2007, I hand delivered a copy of form OWCP-5C, Work Capacity Evaluation, completed by my physician, to Bedford V.A. Human Resources OWCP Specialist, Linda McDonald. In addition, a copy was faxed by my physician to her, advising of the necessity for light/limited duty." Pl.'s Opp'n to Mot. for Summ. J.[8]

---

[8] A U.S. Department of Labor Work Capacity Evaluation signed by Dr. Eric Holstein on May 31, 2007, and appended to Bourque's opposition, states, in response to the question "How long will the restrictions apply?": "[N]ear future, unlimited."

Although a "request must be 'sufficiently direct and specific,' giving notice that [one] needs a 'special accommodation'" the request need only explain "how the accommodation requested is linked to some disability." *Reed*, 244 F.3d at 261. In contrast to the employee in *Reed*, who gave no clear indication that "due to a disability, she needed some special sort of accommodation as to conflicts at work," Bourque made it known to the VA that he required an accommodation because of the neck and shoulder injuries that had left him chronically physically limited. *Id.*; *see also* EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship, 2002 WL 31994335, at *4 (Oct. 17, 2002) ("When an individual decides to request accommodation, the individual or his/her representative must let the employer know that s/he needs an adjustment or change at work for a reason related to a medical condition. To request accommodation, an individual may use 'plain English' and need not mention the ADA or use the phrase 'reasonable accommodation.'").

The Secretary acknowledges that Bourque explained his injuries and his desire for an accommodation at the November of 2006 assignment meeting, but argues that after management told Bourque that he needed to document his request and eligibility by completing the specified paperwork, Bourque failed to comply. *See* EEOC Enforcement Guidance, 2002 WL 31994335, at *7 ("If an individual's disability or need for reasonable accommodation is not obvious, and s/he refuses to provide the

reasonable documentation requested by the employer, then s/he is not entitled to reasonable accommodation.").

Bourque, for his part, notes that Dr. Holstein submitted a Department of Labor work capacity evaluation form to the VA in May of 2007 documenting the severity and durational needs of his injury. Because the Secretary has not addressed this (albeit late) submission in his brief, the court cannot confidently state that there is no genuine factual dispute as to whether Bourque had sufficiently made his disability and need for an accommodation known to the VA.[9]

Bourque's accommodation claim fails for a different reason: He cannot show that he is a "qualified individual" within the meaning of the Rehabilitation Act.[10] To be a

---

[9] It is nonetheless doubtful that Dr. Holstein's brief letter in May of 2007 would have satisfied the requisite standards for medical documentation. For persons seeking an accommodation, these include, *inter alia*: "history of the specific medical condition(s), including references to findings from previous examinations, treatment . . ."; "clinical findings"; "assessment of the current clinical status and plans for future treatment"; "estimate of the expected date of full or partial recovery"; "an explanation of the impact of the medical condition on life activities both on and off the job"; "assessment of the degree to which the medical condition has or has not become static or has stabilized"; "narrative explanation of the medical basis for any conclusion that restrictions or accommodations are or are not warranted and, if they are, an explanation fo their therapeutic value . . . ." Edith Nourse Rogers Mem'l Veteran's Hosp., Hosp. Memo. on Reasonable Accommodation for Emp., at 18 (Jun. 28, 2004), Ex. G.

[10] The EEOC assumed, for purposes of its decision, that Bourque was disabled. Being disabled under the statute is defined as having an impairment that substantially limits one or more major life activities. *See* 42 U.S.C. § 12102(2). Following the EEOC's lead, the court will assume that Bourque is in fact disabled.

11

"qualified individual" under the Act (the second element of a plaintiff's prima facie case), Bourque must show that were he given a reasonable accommodation he could perform the essential functions of his job. "'An 'essential function' is a fundamental job duty of the position at issue . . . [it] does not include the marginal functions of the position.'" *Mulloy v. Acushnet Co.*, 460 F.3d 141, 147 (1st Cir. 2006), quoting *Kvorjak v. Maine*, 259 F.3d 48, 55 (1st Cir. 2001). "Evidence of whether a particular function is essential includes, but is not limited to: '[t]he employer's judgment as to which functions are essential'; '[w]ritten job descriptions prepared before advertising or interviewing applicants for the job'; '[t]he work experience of past incumbents in the job'; and '[t]he current work experience of incumbents in similar jobs.'" *Mulloy*, 460 F.3d at 147, quoting 29 CFR § 1630.2(n)(3).

It is undisputed that the physical demands required of a LPN include lifting more than 20 pounds on a regular basis. Functional Statement of Duties, Ex. A. Bourque described the essential functions of his job to an EEOC investigator as follows: "'total patient care' . . . that include[s] bathing, hygiene, dressing, assisting patients out of bed and skin care . . . [t]he Complainant testified that he cannot perform all the essential functions of his job; specifically patient care functions that may require lifting."[11] Ex.

---

[11] In his deposition, Bourque explained that "they [the VA] need staff that can do full patient care, which I can't do under my restrictions. And for age, actually,

12

C; *see* Bourque Dep., Ex. D.

Bourque also acknowledges that the accommodation he seeks, remaining permanently on "light duty" status, is an arrangement that relies on other nurses doing the heavy lifting and other tasks that he cannot perform. *See* Compl. ¶ 13. In other words, Bourque is seeking an accommodation that would excuse him from essential functions of his job. By definition this does not make him a "qualified individual." *See Mulloy v. Acushnet Co.*, 2005 WL 1528208, at *10 (D. Mass. Jun. 20, 2005), aff'd by *Mulloy*, 460 F.3d 141 ("The fact that others could pick up aspects of [the employee's] job does not advance his 'essential function' argument.").

*Phelps v. Optima Health Inc.*, 251 F.3d 21 (1st Cir. 2001), is a case with nearly identical facts. Phelps, a nurse, injured her back at work. She was, as a result, restricted from doing any heavy lifting. Fortunately for Phelps, her sister worked with her as a nurse and performed patient care she could not manage; when her sister was unavailable other nurses would volunteer their assistance. This job-sharing arrangement was unofficially condoned until new management requested that Phelps update the medical documentation of her physical limitations. When her doctor stated

---

they're trying to force me to retire because they're looking for younger help, stronger help. And I can understand part of that, but that's, I have no control over my injuries or what happened. And that's really it, they're looking for somebody healthier and younger." Bourque Dep. at 53, Ex. D.

13

that she could not lift more than fifty pounds, Phelps was terminated from her position. The First Circuit, in affirming the district court's determination that Phelps was not a "qualified individual," observed that

> [a]lthough a reasonable accommodation may include job restructuring, 42 U.S.C. § 12111(9)(B), an employer need not exempt an employee from performing essential functions, nor need it reallocate essential functions to other employees. *Feliciano v. State of Rhode Island*, 160 F.3d 780, 785 (1st Cir. 1998)*; Soto-Ocasio v. Fed. Express Corp.*, 150 F.3d 14, 20 (1st Cir.1998). Appellees therefore did not have to allow Phelps to engage in job-sharing as a reasonable accommodation. The fact that appellees previously allowed Phelps to engage in a job-sharing arrangement does not obligate them to continue providing such an accommodation."

*Phelps*, 251 F.3d at 26.

Bourque has the burden of proving that a reasonable accommodation would permit him to adequately perform the essential functions of his job. This he has failed to do. *See id*., citing *Feliciano*, 160 F.3d at 786; *see also Kvorjak*, 259 F.3d at 55, quoting *Reed*, 244 F.3d at 259 (plaintiff must make a showing "that the accommodation 'would effectively enable [him] to perform [his] job."); *Basith v. Cook Cnty.*, 241 F.3d 919, 930 (7th Cir. 2001) (employer is not required to make an accommodation that is unreasonable merely because for a time, at least, it went above and beyond what was legally required)*; Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000) (affirming summary judgment for defendant because "[t]wo new jobs would have to be manufactured, one for [the employee] and one for his helper. The Act does not require

14

that."). "To request elimination of an essential function as an accommodation is, in the words of the Tenth Circuit, 'not, as a matter of law, a reasonable or even plausible accommodation.'" *Mulloy,* 2005 WL 1528208, at *10, quoting *Mason v. Avaya Commc'ns Inc.*, 357 F.3d 1114, 1122-1123 (10th Cir. 2004).

## *Retaliation*

To make out a prima facie case of retaliation under the Rehabilitation Act, Bourque must prove that: (1) he was engaged in protected conduct, (2) he suffered an adverse employment action, and (3) there was a casual connection between the two. *Miller v. Verizon Commc'ns, Inc.*, 474 F. Supp. 2d 187, 200 (D. Mass. 2007), citing *Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir. 2003).[12] It is undisputed that the filing of an EEOC complaint alleging disability discrimination is protected activity and that Bourque suffered an adverse employment decision. In attempting, however, to establish the causal connection, Bourque relies solely on a temporal nexus. *See Wyatt v. City of Boston*, 35 F.3d 13, 16 (1st Cir. 1994) ("One way of showing

---

[12] "The ADA incorporates the procedures and enforcement mechanisms of Title VII, the basic statute prohibiting discrimination in employment. [42 U.S.C.] § 12117(a). Accordingly, guidance on the proper analysis of [claimant's] ADA retaliation claim is found in Title VII cases. *Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 16 (1st Cir.1994)." *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997). Because the Rehabilitation Act incorporated the ADA's retaliation provision, Title VII cases are also applicable to it. *See Duncan*, 214 F.R.D. at 49.

15

causation is by establishing that the employer's knowledge of the protected activity was close in time to the employer's adverse action.").

The time span here, however, from March of 2006 to November of 2006, is simply too extended to bridge the gap. There must be something more than a few weak inferences to surmount the summary judgment hurdle where the polar events are widely separated in time. *Lewis v. Gillette Co.*, 22 F.3d 22, 25 (1st Cir. 1994). Where temporal proximity is the only evidence establishing retaliation, the proximity must be "very close." *Bishop v. Bell Atl. Corp.*, 299 F.3d 53, 60 (1st Cir. 2002), quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (one-year gap between protected activity and adverse action insufficient to establish a nexus). *See also Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 828 (1st Cir. 1991) (nine months insufficient).

ORDER

For the foregoing reasons, the Secretary's motion for summary judgment is <u>ALLOWED</u>. The Clerk will enter judgment accordingly and close the case. A copy of this decision and the judgment is to be forwarded to Bourque by U.S. mail.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE